IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONTA SMITH,

                Petitioner,           Case No. 3:10 CV 1913

   -vs-

                                         <u>MEMORANDUM OPINION</u>

KEITH SMITH,

                Respondent.

KATZ, J.

In 2007, a jury in Cuyahoga County, Ohio convicted petitioner Donta Smith (Mr. Smith) of rape and kidnapping; he received consecutive sentences of ten years and three years. In this Court, Mr. Smith filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, against Warden Kevin Smith. (Doc. 1.) The Court referred the matter to Magistrate Judge Kenneth S. McHargh for preparation of a Report and Recommendation. Local Rule 16.1. The Magistrate Judge's R&R (Doc. 15) and Mr. Smith's objection to the R&R (Doc. 18) are now before the Court. For the reasons stated below, the Court denies the objection and adopts the R&R as the order of this Court.

**<u>Background</u>**

The R&R adopted the Ohio Court of Appeals' factual and procedural background. (Doc. 15 at 2–3 (quoting *State v. Smith*, 8th Dist. Cuyahoga No. 90996, 2008-Ohio-6954, at ¶¶ 4–11).) Together they accurately describe the relevant background information and the Court adopts them. Briefly, Mr. Smith moved in with his girlfriend's family in 2001. His girlfriend's younger sister, identified as "KM" for these purposes, claims Mr. Smith began approaching her inappropriately shortly thereafter, when she was 12 years old. KM says the encounters began with Mr. Smith walking in on her, touching her, and kissing her. She says that in the summer of 2002, Mr. Smith

invited her into his room and tried to show her a pornography video, and, when she tried to leave, he pushed her onto the bed and "held [her] down and started kissing and touching" her. *Smith*, 2008-Ohio-6954 at ¶ 8. She says she tried to get up and begged him to stop, but he held her down, removed her pants, and partially penetrated her vaginally with his penis. KM said that her struggling "annoyed" Mr. Smith and he then permitted her to leave. *Id.*

KM kept the matter to herself for a few years but told her mother in 2007. Her mother called the police, who began an investigation. That investigation led to three counts of rape, one count of attempted rape, one count of gross sexual imposition, and four counts of kidnapping against Mr. Smith. At a jury trial, KM, KM's mother, the police detective, Mr. Smith, and Mr. Smith's wife (who is KM's sister) testified. During his cross-examination of KM, Mr. Smith's attorney asked her if she "ever discussed" with her father what she told her mother. KM answered: "No." The State objected to further cross-examination on this matter. Mr. Smith's defense counsel said that he was trying to elicit testimony that KM's father had been previously convicted of rape. Nonetheless, the trial court sustained the State's objection, reasoning that KM's conversation with her father was not brought out on direct examination, so it was outside the scope of cross-examination. KM's mother subsequently testified that after KM's father arrived, KM and her father spoke for some time.

Of the nine counts charged, the jury found Mr. Smith guilty of one count of rape and one count of kidnapping.

Mr. Smith filed a direct appeal in which he claimed he received ineffective assistance of counsel at trial, that the conviction was against the manifest weight of the evidence, and that the

trial court erred when it disallowed testimony concerning the alleged conversation between KM and her father. The Ohio Court of Appeals affirmed the convictions. *Id.* at ¶ 35.

Mr. Smith filed a petition for a writ of habeas corpus with this Court and the State moved to dismiss it as untimely filed. The Magistrate Judge issued an R&R finding that Mr. Smith had filed motions in the state court that tolled the statute of limitations and recommending the Court deny the State's motion to dismiss. (Doc. 8.) The State did not file an objection to that R&R and the Court adopted the denial of the State's motion to dismiss as its order. (Doc. 9.) The Magistrate Judge then prepared the R&R which is now before the Court and addresses the merits of Mr. Smith's claims.

In his petition, Mr. Smith raised two claims. First, he says he received ineffective assistance of counsel because his trial counsel failed "to more closely question either the state's or his own witnesses," which would have uncovered testimony "showing that the accuser in this case had a motive for manufacturing allegations against [Mr. Smith]." (Petition, Doc. 1 at 4.) Second, Mr. Smith says: "The trial court erred in limiting his cross-examination of the victim regarding her conversation with her father after she made her disclosure of sexual abuse[.]" (*Id.* at 5.)

Mr. Smith had raised the first claim regarding ineffective assistance of counsel on direct appeal. The R&R finds the state court of appeals' consideration of the ineffective assistance issue was not objectively unreasonable and recommends denying the writ on this ground.

Mr. Smith also raised his second claim, regarding the evidentiary ruling, on direct appeal. Because Mr. Smith should not have been limited to cross-examining only on matters raised by the State in direct examination, the court of appeals said "the trial court's analysis was flawed." Nevertheless, it found no ultimate error in preventing the testimony because Mr. Smith's counsel

3

said he wanted to alert the jury that KM's father was a convicted rapist, and this was irrelevant to the issues in the case. The R&R points out that this Court cannot review the evidentiary objection itself unless it implicates a violation of federal law and that claim under federal law was fairly presented to the state court. The R&R recommends denying the writ as to this second ground.

Mr. Smith objects only to the R&R's finding on his first (ineffective assistance of counsel) claim.

### **Ineffective Assistance of Counsel**

Mr. Smith's sole objection relates to the R&R's analysis of his ineffective assistance of counsel claim. The Court makes a *de novo* determination of those issues to which Mr. Smith objects. Fed. R. Civ. P. 72(b)(3).

The R&R correctly and succinctly states the standard that the Court utilizes (and Mr. Smith does not object to the use of this standard). (*See* Doc. 15 at 5–6.) In short, the Supreme Court has said:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–413 (2002).

Mr. Smith says "there is absolutely no competent credible evidence that Petitioner committed the acts alleged by KM . . . [so] trial counsel's failure to conduct a more thorough

examination and cross-examination of all witnesses cannot be considered sound trial strategy." (Objection, Doc. 18 at 7.) He asserts that a more thorough examination and cross-examination of witnesses would have led to acquittal on all charges and that the court of appeals' determination is contrary to *Strickland v. Washington*, 466 U.S. 668 (1984).

The R&R correctly states that if the state court considered and denied the petitioner's ineffective assistance claim, then AEDPA dictates that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785, (2011). This means the Court does not simply apply *Strickland* to evaluate the claim; it examines the state court's application of *Strickland* to test whether that was objectively unreasonable. The result is a particularly high bar for petitioners. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 786).

Mr. Smith does not identify how the state court improperly applied *Strickland* and, instead, reiterates his claim that more thorough witness examinations may have revealed that KM had a motive to fabricate her story. The R&R is correct that Mr. Smith's argument does not demonstrate a *Strickland* violation, much less demonstrate that the state court unreasonably applied *Strickland* when considering this issue.

A *Strickland* claim has two prongs: a performance prong and a prejudice prong. *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000). To meet the performance prong, the claimant must show his attorney's conduct was so deficient that it deprived him of his constitutional right to representation. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

5

Generally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation omitted); *accord Boykin v. Webb*, 541 F.3d 638, 649 (6th Cir. 2008). In particular, decisions about whether to cross-examine a witness and to what extent to cross-examine are committed to the realm of trial strategy, and, unless a petitioner can show that the counsel neglected his duty to exercise his discretion, courts must avoid second-guessing trial strategy. *Strickland*, 466 U.S. at 689; *see e.g. Sowell v. Anderson*, 663 F.3d 783, 800 (6th Cir. 2011) (counsel's performance was not deficient even though he did not cross-examine a witness to the shooting); *Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) (where an attorney declined to cross examine a witness entirely, that "strategic choice is 'virtually unchallengeable' because she made it after considering the relevant law and facts." (quoting *Strickland*, 466 U.S. at 690)).

Since courts have consistently held that not cross-examining a witness at all can be within the realm of unchallengeable trial strategy, the Court has no legal basis to go further into second-guessing trial strategy by examining how thoroughly counsel examined a witness. Short of the petitioner pointing to some egregious conduct that caused his lawyer to completely abdicate his role in presenting the petitioner's case, *Strickland* does not provide a forum for the Court to second-guess strategic decisions. Thus, Mr. Smith has not shown that his trial counsel was defective for not examining and cross-examining witnesses more thoroughly in the hopes of eliciting some motivation KM had to fabricate her story.

Mr. Smith also cannot show prejudice resulting from how his trial counsel questioned witnesses. He opines that more thorough questioning may have led to revealing to the jury that

6

KM had a sinister motive, but *Strickland* requires more than a possibility that the outcome could be different; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on this claim, Mr. Smith would have to show a reasonable probability that KM had an ulterior motive for accusing Mr. Smith; that, with more thorough questioning, Mr. Smith's trial counsel could have elicited that fact; and, that the jury would have believed KM's accusations were bogus. Mr. Smith has made no such showing. *See, e.g. Moss*, 286 F.3d at 866 (putting aside the "speculation" that foregone cross-examination as to the unreliability of eyewitness testimony would have a "reasonable probability" of altering the outcome).

Finally, Mr. Smith has not shown that the state court of appeals' application of the above *Strickland* standard was objectively unreasonable. That court applied Ohio's ineffective assistance standard, which the Ohio Supreme Court said is "is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington.*" *State v. Bradley*, 538 N.E.2d 373, 379 (Ohio 1989). The Ohio Court of Appeals properly analyzed Mr. Smith's ineffective assistance of counsel claim:

> Smith argues that his trial counsel rendered ineffective assistance by failing to more closely question either the state's or his own witnesses on matters Smith considers would have been crucial to his defense. Smith asserts that had the witnesses been pressed, they would have presented testimony showing KM had a motive for manufacturing allegations against him. This court disagrees.
> Smith's claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus; see, also, *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors,

7

> the result of the trial would have been different." *Bradley,* supra, paragraph three of the syllabus.
>
> The burden is on appellant to prove ineffectiveness of counsel. *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. Trial counsel is strongly presumed to have rendered adequate assistance. *Id.* Moreover, this court will not second-guess what could be considered to be a matter of trial strategy.
>
> The record in this case with regard to counsel's actions demonstrates counsel's performance fell within objectively reasonable standards of representation. First, it must be noted that decisions regarding the extent of either examination or cross-examination of witnesses certainly falls within the realm of trial strategy. See, e.g., *State v. Gardner,* Cuyahoga App. No. 85275, 2005-Ohio-3709, ¶ 28. Counsel is not required to present a defense beyond raising the possibility of reasonable doubt. *Id.*, ¶ 31.
>
> Second, the record reflects counsel came well-prepared to the trial, and cross-examined KM extensively, especially with respect to inconsistencies between her written statement and her testimony and her recollection of the timing of the relevant events. Counsel subsequently used these inconsistencies and discrepancies in his questions of the remaining witnesses. Obviously, the thrust of the defense was to cast doubt on KM's reliability.
>
> Counsel cannot at this juncture be faulted for choosing this strategy, since it proved quite successful. After all, the jury acquitted Smith of seven of the nine counts presented against him.
>
> Therefore, Smith cannot sustain his burden to show counsel provided constitutionally ineffective assistance. *Bradley,* supra. His first assignment of error, accordingly, is overruled.

*Smith*, 2008-Ohio-6954 at ¶¶ 13–19.

The state court applied the ineffective assistance of counsel standard properly. Because he cannot demonstrate either prong of ineffective assistance of counsel, Mr. Smith has not met the high burden of showing the state court application of the standard is incorrect in any way, much less that the state court's application was objectively unreasonable.

Having made a *de novo* review of the finding to which Mr. Smith objects and having found Mr. Smith's objection to be without merit, the Court adopts the R&R's holding on Mr. Smith's ineffective assistance of counsel claim.

### **Cross-Examination**

In his habeas petition, Mr. Smith also claimed "he should have been able to inquire into the particulars of the accuser's conversation with her father after her disclosure [of sexual abuse]." (Doc. 1 at 10–11 (brackets in original).) The R&R properly analyzes this contention:

> Here, the state court found that defense counsel wanted to inquire into the victim's conversation with her father "because he wanted the jury to be aware that KM's father was 'a convicted rapist'." The court ruled that the issue for the jury was whether Smith had committed the offenses, not whether the victim's father was a "convicted rapist," and inquiry into his criminal record was irrelevant. (Doc. 6, RX 9, at 9; Smith, 2008 WL 5423556, at *4.)
>
> The second ground of Smith's petition was not fairly presented as a federal constitutional claim to the state courts. Even if it had been so presented, Smith has not demonstrated the state court's ruling on cross-examination into irrelevant areas resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See Van Arsdall*, 475 U.S. at 679; *see also Washington*, 455 F.3d at 729; *Davis*, 430 F.3d at 360; *Norris*, 146 F.3d at 329.
>
> The petition should not be granted on the basis of the second ground.

(Doc. 15 at 15–16 (footnote omitted).)

Because Mr. Smith did not object to this second finding, the Court reviews it only for clear error. Fed. R. Civ. P. 72 advisory committee's notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The R&R's analysis shows no error at all, much less clear error and the Court adopts it in full.

### **Conclusion**

Mr. Smith has not shown that Magistrate Judge's findings in the R&R were incorrect. Further, he has not made a substantial showing of the denial of a constitutional right, so any appeal from this order would not be taken in good faith.

The Court denies Mr. Smith's objections to the R&R. (Doc. 18.) It is therefore,

9

ORDERED, that the Report and Recommendation be, and hereby is, adopted as the Order of this Court. (Doc. 15). Petition for writ of habeas corpus is denied.

FURTHER ORDERED that under 28 U.S.C. §1915(a), an appeal of this case should not proceed *in forma pauperis* as it would not be taken in good faith.

FURTHER ORDERED that a motion for certificate of probable cause under 28 U.S.C. §2253 is hereby denied *sua sponte*.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE